# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Russell Nation, individually and as next friend of J.N., a minor, and Carol Nation individually and as next friend of J.N., a minor | ) ) ) ) |
| Plaintiffs, | ) **Case No.: 18-CV-01090-R** |
| -vs- | ) |
| | ) |
| Piedmont Schools Board of Education, and Holly Noelle Morris, | ) ) ) |
| | ) |
| Defendants. | |

## DISTRICT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant, Independent School District No. 22 of Canadian County, Oklahoma, a/k/a Piedmont Public School District, ("District")[1], submits the following in reply to Plaintiffs' Response to Defendant's Motion to Dismiss (Doc. No. 10).

**Negligence Claims against District:**

With respect to the allegations regarding negligent hiring, retention, training, and supervision set forth in Count 1, Plaintiffs submit little in response except to argue, without authority, that the discretionary function exemption of the Governmental Tort Claims Act ("GTCA") does not apply to the duty to report child abuse. Defendant has not argued that the GTCA's discretionary function exemption applies to the duty to report child abuse. However,

---

[1] District does not object to a correction of the style of the case as Plaintiffs request on Page 11 of their Response (Doc. No. 10.). However, the correct name of District is Independent School District No. 22 of Canadian County, a/k/a Piedmont Public Schools.

Case 5:18-cv-01090-R   Document 12   Filed 12/27/18   Page 2 of 11

the clear weight of the authority, supports dismissal of Plaintiffs' claims of negligent hiring, retention, training, and supervision as well as Plaintiffs' claims regarding failure to maintain safe school premises. This Court dismissed very similar negligence claims alleging failure to maintain a safe school premise and failing to properly supervise teachers relying on the discretionary function exemption of the GTCA. *Najera v. Indep. Sch. Dist. of Stroud*, 60 F.Supp. 3d 1202 (W.D. Okla. 2014).

To the extent that Plaintiff alleges failure to report child abuse, District could not have been negligent in failing to report child abuse as a matter of law. 10A O.S. § 1-2-101(B)(1) imposes a duty that "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services." "Abuse" as defined by the statute, means "harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare, including but not limited to nonaccidental physical or mental injury, sexual abuse, or sexual exploitation." 10A O.S. § 1-1-105(2) (emphasis added). Finally, a "[p]erson responsible for a child's health, safety, or welfare" is defined as:

> a parent; a legal guardian; custodian; a foster parent; a person eighteen (18) years of age or older with whom the child's parent cohabitates or any other adult residing in the home of the child; an agent or employee of a public or private residential home, institution, facility or day treatment program ...; or an owner, operator, or employee of a child care facility ...[.] [2]

---

[2] 10 O.S. § 403(3) defines "child care facility" as "any public or private child care residential facility, child-placing agency, foster family home, child care center, part-day child care program, school-age program, summer day camp, family child care home, or large

10A O.S. § 1-1-105(51). The definition does not include a school district or school employee. *See M.C. v. Hollis Indep. Sch. Dist. No. 66 of Harmon Cty., Oklahoma*, CIV-15-343-C, 2017 WL 1102680, at *6 (W.D. Okla. Mar. 23, 2017) (unreported).

These definitions make clear that the purpose of the child abuse reporting provisions found in 10A O.S. § 1-2-101(B) is to report suspected abuse inflicted by a child's primary caregivers, not by any other individual, including an employee of a public school district. In fact, DHS has repeatedly refused school districts' requests to perform an investigation unless the abuse involves a parent, guardian, or person living within the child's home. This legislative intent is made even more clear by the Act's express statement of legislative intent which provides, "[f]or the purposes of the Oklahoma Children's Code, the Legislature recognizes that: . . . *[p]arents* have a natural, legal, and moral right, as well as a duty, to care for and support their children." 10A O.S. § 1-1-102(A)(1) (emphasis added). "A child has a right to be raised by the *mother and father* of the child as well as a right to be raised free from physical and emotional abuse or neglect." 10A O.S. § 1-1-102(A)(2) (emphasis added). Subsection B. provides further that "[i]t is the intent of the Legislature that the Oklahoma Children's Code provide the foundation and process for state intervention into the *parent-child* relationship . . . ." *Id*. at § 1-1-102(B) (emphasis added.)

---

family child care home providing either full-time or part-time care for children away from their own homes." This definition also does not include public schools.

Therefore, any alleged abuse of J.N. inflicted upon him by any individual that is not a parent or caregiver as defined within the Oklahoma Children's Code is not covered by the Oklahoma child abuse reporting statute. As such, there was no violation of 10A O.S. § 1-2-101(B) as alleged by Plaintiff, and further, the claims of negligent hiring, training, supervision, or failure to keep a safe premises are barred by the GTCA.

**Negligent Infliction of Emotional Distress**

Plaintiff's reliance on *Kraszewski* is misplaced. As was clearly stated there, "negligent infliction of emotional distress is **not** an independent tort."*Kraszewski v. Baptist Med. Ctr. of Oklahoma, Inc*., 1996 OK 141, 916 P.2d 241, 244, Fn. 1. (Emphasis added). Contrary to Plaintiff's assertion that the Plaintiff in *Kraszewski* was able to maintain a cause of negligent infliction of emotional distress, the Oklahoma Supreme Court actually ruled that Plaintiff could maintain a claim of *intentional* infliction of emotional distress. *Id*. at 248. Here, Plaintiff has not asserted a claim intentional infliction of emotional distress, but of *negligent* infliction of emotional distress which is not recognized as an independent tort under Oklahoma law.

**Plaintiffs' Due Process Claim under Section 1983**

The Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation and does not serve as a guarantee of a minimal level of safety. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). "[T]he Due Process Clause ... was

intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Id.* at 196 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). As Plaintiffs note, there are two (2) exceptions to the limits established by *DeShaney*: 1) the special relationship doctrine which exists when the state has a custodial relationship with the victim, and 2) the state created danger doctrine which exists when the state created the danger which harmed the victim. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003); *Graham v. Ind. Sch. Dist. No. 1-89*, 22 F.3d 991, 994-95 (10th Cir. 1994).

To the extent that Plaintiffs are asserting an exception to municipal liability on the basis of the special relationship doctrine, the law is clearly established that the special relationship doctrine does not apply to public school settings. *See*, *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000); *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996).

The danger-creation exception to the rule established by *DeShaney* applies only when a state actor affirmatively acts to create the danger or increases a plaintiff's vulnerability to the danger of private violence. *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). To state a prima-facie case, the plaintiff must show that (i) the individual actors or the governmental entity created the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and

proximate harm; (iv) the risk must be obvious and known; (v) the defendant must have acted recklessly in conscious disregard of that risk; and (vi) such conduct, when viewed in total, must shock the conscience. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008); *Schaefer v. Las Cruces Public Sch. Dist.*, 716 F.Supp 2d 1052, 1065 (D.N.M. 2010).

To establish liability under the danger-creation exception, the action of the government or its employee must "shock the conscience" of federal judges. *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995). The government action must "in and of itself be egregiously unacceptable, outrageous, or conscience-shocking." *Amsden v. Moran*, 904 F.2d 748, 753-54 (1st Cir. 1990) (emphasis in original*); see also Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993) (a plaintiff must establish that the government action complained of is truly irrational, which is something more than arbitrary, capricious, or in violation of state law). In order to "shock the conscience," the conduct of the state actor must reach a high level of outrageousness and must be more than negligent, reckless, or intentional behavior; the plaintiff must demonstrate that the behavior was outrageous and had a magnitude of potential or actual harm that is conscience shocking. *Uhlrig* at 574. *See also, Camuglia v. City of Albuquerque*, 48 F.3d 1214, 1222-23 (10th Cir. 2006).

In order to establish conscience shocking behavior, a plaintiff must establish that "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that

it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Garcia by Garcia v. Miera*, 817 F.2d 650, 655 (10th Cir. 1987). Requiring a student to clean out a toilet with his bare hands does not rise to the level of conscience-shocking. *Harris v. Robinson*, 273 F3d. 927, 931-32 (10th Cir. 2001).

Plaintiffs have failed to allege any facts which would bring this case within the danger-creation theory of liability against District.

### A.      Supervisory Liability

Plaintiffs also appear to assert a claim for supervisory liability. Doc. No. 1-1, Petition at ¶28. Government officials cannot be held liable in civil rights actions for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010.), *citing*, *Iqbal*, 129 S.Ct. at 1942. "[B]ecause vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1198. Thus, when a plaintiff sues an official under Section 1983 for conduct arising from his supervising responsibilities, the plaintiff must plausibly plead not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well. *Id*. Plaintiffs have failed to allege any particular actions of any individuals with supervisory responsibilty

### B.      Failure to Train

Further, District cannot be liable for a failure to train unless the Plaintiffs plead and ultimately prove that District's failure to train its employees evidences a deliberate indifference to the rights of J.N. *Thelma D by and through Delores A. v. Board of Educ. of City of St. Louis*, 934 F.2d 929 (8th Cir. 1991); *Ware v. Unified Sch. Dist. No. 492, Butler County*, 902 F.2d 815, 819 (10th Cir. 1990). The focus of this determination is on the adequacy of the training program in relation to the tasks the particular employees or officers must perform and the connection between the identified deficiency in the training program and the ultimate injury. *City of Canton v. Harris*, 489 U.S. 378, 390-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To succeed on a Section 1983 failure to train claim, the party must prove that the training deficiency actually caused the injury. *Id*. at 391.

Establishing liability on a failure to train claim under Section 1983 is difficult. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3rd Cir. 1997). Effective training need not specifically address every conceivable situation an employee may encounter. *Jennings v. Wentzville R-IV School Dist.*, 397 F.3d 1118, 1123 (8th Cir. 2005). A municipality may be held liable where there is essentially a complete failure to train or training that is so reckless or grossly negligent that the future misconduct is almost inevitable. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). A plaintiff must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect deliberate indifference to whether the alleged

constitutional deprivations occurred. *Reitz*, 125 F.3d at 145. Additionally, the fact that a particular employee never received any of the training is not sufficient to find liability on the school  district for failure to train. *Thelma D,* 934 F.2d at 934; *City of Canton*, 489 U.S. at 390-91.

The minimal facts as alleged by Plaintiffs do not establish that the District's failure to train its employees amounted to deliberate indifference, a standard much higher than negligence. In fact, Plaintiffs' Petition is totally devoid of any factual allegation regarding the District's training program. Plaintiffs do not state how the training program allegedly caused J.N.'s injury, how the training program was deficient, nor how such deficiency amounted to deliberate indifference. An allegation that training was insufficient and that J.N. was injured is not enough.

**Plaintiffs' Equal Protection Claim**

Although Plaintiffs assert that J.N. is a special needs student and was treated differently than other students, Plaintiffs have not asserted any fact tending to show that the alleged disparate treatment "was the result of intentional or purposeful discrimination." *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003). Further, Plaintiffs argue that Defendant Morris was a special education teacher and that her actions only affected special needs students; however, such conclusions do not show any fact that District's failure to report was somehow directed at special needs students.  Plaintiffs have not asserted that some custom or policy resulted in a deprivation to J.N. as required under Section 1983.

**Plaintiffs' Title IX Claim**

Plaintiffs allege that they maintain a valid Title IX claim insofar as they have alleged that Morris "punched J.N. in his privates and made comments relating to the size of his penis." [Doc. No. 10, pg. 15]. As acknowledged by both parties, to constitute sexual harassment under Title IX, the harassment must be "so severe and pervasive as to deprive the student of the educational benefits or opportunities provided by the school district. In addition, the harassment must constitute discrimination based on sex, and conduct that is "merely tinged with offensive sexual connotations" is not enough to constitute sexual harassment under Title IX. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998).

Here, a singular alleged incident of a generalized comment regarding J.N.'s penis size is insufficient to establish a Title IX claim of sexual harassment. Further, there are no facts which would tend to indicate that any action taken by District was motivated by J.N.'s sex as opposed to Morris choosing demeaning comments and actions as a form of mental abuse and physical abuse independent of J.N.'s sex.

**Conclusion:**

For the reasons set forth above, Plaintiffs' claims against District should be dismissed.

S/Laura L. Holmes
Laura L. Holmes, OBA #14748
Attorney For Defendant District
The Center For Education Law, P.C.
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
E-mail: LHolmes@cfel.com

## Certificate of Service

I hereby certify that on December 27, 2018, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System: Donald A. Herring.

S/Laura L. Holmes
Laura L. Holmes