## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RUSSELL NATION, individually<br>and as parent and next friend of J.N.,<br>a minor and CAROL NATION,<br>individually and as parent and next<br>friend of J.N., a minor,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. CIV-18-1090-R** |
| **PIEDMONT INDEPENDENT<br>SCHOOL DISTRICT NO. 22<br>and HOLLY NOELLE MORRIS,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is the Motion to Dismiss (Doc. No. 25) filed by Defendant

Piedmont Independent School District No. 22, directed to Plaintiff's Amended Complaint.

Plaintiff responded in opposition to the motion (Doc. No. 31) and Defendant replied (Doc.

No. 32). Upon consideration of the parties' submissions, the Court finds as follows.

Plaintiffs Russell and Carol Nation filed this action individually and on behalf of

their son, J.N., who is a student in the Piedmont Independent School District. Plaintiffs

allege that during the 2017-18 school year, Defendant Morris, who served as special

needs/special education teacher for J.N., verbally and physically abused J.N., as well as

other special needs students. Plaintiffs allege that members of the administration were

warned of the abuse being inflicted by Morris but failed to take proper actions to stop the

abuse.

In considering a motion under Rule 12(b)(6), the Court must determine whether the Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555, 570 (citation omitted). Much of Defendant's motion argues that Plaintiffs' claims are legally insufficient without regard to the sufficiency of the factual underpinnings alleged by Plaintiffs.

In Count 1, Plaintiffs levy a number of claims against the District under the general heading of "negligence," specifically identifying "negligent hiring, retention, training, supervision and premises liability" in the heading. (Doc. No. 23, p. 3). Defendant District seeks dismissal of the Plaintiffs' negligence claims, arguing that the Oklahoma Governmental Tort Claims Act ("OGTCA") shields the District from liability for negligence. In its final argument in the motion, Defendant District also asserts that, because Plaintiffs allege Defendant Morris assaulted J.N., an intentional tort, the District cannot be held liable under the Act.

Under the GTCA, a governmental entity is liable for "torts for which a private person would be liable, unless the torts are committed outside the course and scope of employment or unless they are committed in bad faith or in a malicious manner." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). "Scope of employment" is defined as an act where the employee performed the act "in good faith within the duties of

his office or employment." *Id*. More specifically, an employee is said to be acting within the scope of employment if the employee is doing that which is customary within the particular trade, engaging in work assigned, "or if doing that which is proper, necessary and usual to accomplish the work assigned." *Id*.

> As a general rule, it is not within the scope of an employee's employment to commit an assault on a third person. However, this general rule does not apply when the act is one which is "fairly and naturally incident to the business", and is done "while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business." An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer.

*Rodebush v. Oklahoma Nursing Homes, Ltd*., 867 P.2d 1241, 1245 (Okla.1993) (citations omitted); *see also Baker v. St. Francis*, 126 P.3d 602 (Okla. 2005). Ordinarily, the scope of employment determination is one for the jury based on the particular facts and circumstances. *Roof v. New Castle Pub. Sch*., No. CIV-14-1123-HE, 2015 WL 1040373, at *3 (W.D. Okla. Mar. 10, 2015).

Although Plaintiff's factual allegations are not substantially developed in the Amended Complaint, the Court finds them sufficient to avoid dismissal at this juncture. Plaintiffs allege that Defendant Morris both physically and verbally abused J.N. while serving as his special education teacher in the Piedmont School District during the 2017-18 school year. Although Plaintiffs' claims may not survive summary judgment, given that the issue requires consideration of the particular facts and circumstances, which are not before the Court at the Motion to Dismiss stage, the Court hereby denies the motion on this

premise and turns to the issue of whether the OGTCA waives the District's sovereign immunity for Plaintiffs' claims.

Under the Act, sovereign immunity extends to the State's political subdivisions, including the District. 51 O.S. § 152(11)(b). Pursuant to the terms of the OGTCA, the State waives sovereign immunity from suit only in certain circumstances. See 51 O.S. § 153. As relevant here, the Act provides an exemption from liability for performing or failing to perform "any act or service which is in the discretion of the [Defendant] or its employees." 51 O.S. § 155(5). Defendant District argues this section precludes Plaintiff's negligence claims and further argues it is entitled to immunity from Count 1 under § 155(4) of the GTCA, which protects a political subdivision where the allegation is that it adopted or enforced or failed "to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Plaintiff's negligence claim includes ten subsections listing alleged failures by the District in its duties to Plaintiff, some of which are overlapping.[1]

With regard to § 155(5), as noted by Plaintiffs,

the discretionary function exemption from governmental tort liability is extremely limited. This is so because a broad interpretation would completely eradicate the government's general waiver of immunity. Almost all acts of government employees involve some element of choice and judgment and would thus result in immunity if the discretionary exemption is not narrowly construed. Just as the waiver is not a blue sky of limitless

---

[1] Plaintiffs allege Defendant was negligent in (A) permitting Morris to abuse students; (B) failing to timely report Morris to police; (C) retaining Morris after the abuse allegations were made; (D) failing to investigate Morris' behavior; (E) failing to protect J.N. and other students from Morris; (F) hiring Morris; (G) developing or implementing or failing to implement policies and procedures to protect students from Morris; (H) training Morris; (I) supervising Morris; and (J) keeping the premises safe. (Doc. No. 23 ¶ 20(A)-(J)). The Court construes the claims set forth in ¶ 20(A), (E), and (I) as alleging negligent supervision.

liability, the discretionary exemption is not a black hole enveloping the waiver.

*Nguyen v. State*, 788 P.2d 962, 964 (Okla.1990)(footnote and citations omitted). The Court finds upon consideration of Plaintiffs' factual and legal allegations, that certain of the negligence claims are barred by § 155(5), while others survive the instant motion.

The Court declines to dismiss Plaintiffs' negligent supervision claims, ¶ 20(A), (E), and (I), in light of the absence of controlling authority on whether such claims are barred. Oklahoma has adopted the "planning-operational" approach, which protects discretionary functions in the policymaking process and as to planning decisions, but not negligent performance of any policy, *see Franks v. Union City Pub. Schs.*, 943 P.2d 611, 613 (Okla. 1997). Although "[d]istinguishing between discretionary and ministerial activities can be difficult," *Johnson v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*, No. CIV-15-680-D, 2016 WL 1270266, *8 (W.D. Okla. Mar. 31, 2016), the Court finds that negligent supervision claims fall within the discretionary function provision.

> The Oklahoma Supreme Court has not addressed the question of whether a political entity's failure to hire, train, supervise, monitor, and/or retain its employees falls under the § 155(5) discretionary function exception. See Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty., 949 F. Supp. 2d 1104, 1108 (W.D. Okla. 2013) (finding no controlling decision regarding the applicability of the discretionary function exception to a similar negligence claim). Nonetheless, the clear weight of authority supports finding that hiring, training, supervision, monitoring, and retention are actions that implicate a political entity's policy and planning functions and therefore fall under the discretionary function exemption of § 155(5). See Johnson v. Indep. Sch. Dist. No. 89 of Okla. Cnty., No. CIV–15–680–D, 2016 WL 1270266, at *8 (W.D. Okla. Mar. 31, 2016) (negligent supervision); Burris v. Okla. ex rel. Okla. Dep't of Corrections, No. CIV–13–867–D, 2014 WL 442154, at *9 (W.D. Okla. Feb. 4, 2014) (negligent hiring, training, supervision, and retention); Seals v. Jones, No. 12–DV–569–JED–TLW, 2013 WL 5408004, at *4 (N.D. Okla. Sept. 25, 2013) (negligent hiring and

retention); Houston, 949 F. Supp. 2d at 1109 (negligent supervision and retention); Fumi v. Bd. of Conty. Comm'rs of Rogers Cnty., No. 10–CV–769–TCK–PJC, 2011 WL 4608296, at *6 (N.D. Okla. Oct. 3, 2011) (negligent training and supervision); Burns v. Holcombe, No. 09–CV–152–JHP, 2010 WL 2756954, at *15 (E.D. Okla. July 12, 2010) (negligent hiring, training, and supervision); Jackson v. Okla. City Pub. Schs., 333 P.3d 975, 979 (Okla. Civ. App. 2014) (negligent hiring, training, and supervision).

*Langkamp v. Mayes Emergency Servs. Tr. Auth.*, No. 16-CV-0676-CVE-FHM, 2017 WL 875483, at *4 (N.D. Okla. Mar. 3, 2017). Thus, the Court finds that Plaintiffs' failure to supervise claims should be dismissed.

With regard to Plaintiffs' assertion that Defendant is liable for its employees' failure to report the alleged abuse to the Police, the Court finds Defendant is entitled to dismissal. In response to the Motion, Plaintiffs argue that Defendant violated its mandatory duties under the Oklahoma Children's Code, which it contends created a non-discretionary duty and therefore Defendant cannot rely on § 155(5). To the extent Plaintiffs rely on the alleged violation of Okla Stat. tit. 10A § 1-2-101(B)(1), the mandatory reporting provision of the Oklahoma Children's Code, the Court finds dismissal is appropriate. Accepting Plaintiffs' factual allegations as true, they do not sufficiently allege violation of the statute because the definitions therein limit the scope of the Code's coverage.

During the relevant timeframe Section 1-2-101(B)(1) provided:

Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services.

Id. [2] Section 1-1-105(2) defines abuse in a limited manner as "harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare. . . ." Section 1-1-105(52) defines "person responsible for the child's health" to include:

> a parent; a legal guardian; custodian; a foster parent; a person eighteen (18) years of age or older with whom the child's parent cohabitates or any other adult residing in the home of the child; an agent or employee of a public or private residential home, institution, facility or day treatment program as defined in Section 175.20 of Title 10 of the Oklahoma Statutes; or an owner, operator, or employee of a child care facility as defined by Section 402 of Title 10 of the Oklahoma Statutes.

By this definition Ms. Morris is not a person responsible for J.N.'s health, safety or welfare, and therefore, the District cannot be held liable for any alleged failure of its employees to follow the Oklahoma Children's Code and report the alleged abuse. *See M.C. v. Hollis Indep. School Dist. No. 66 of Harmon County, Oklahoma*, No. CIV-15-343-C, 2017 WL 1102680, *6 (W.D. Okla. Mar. 23, 2017). Accordingly, Defendant District is entitled to dismissal of Plaintiffs' negligence claim premised on the alleged failure to follow the dictates of § 1-1-102(B)(2).

The Amended Complaint's allegations of negligence include assertions that Defendant negligently retained Ms. Morris following the allegations of abuse. (Doc. No. 23, ¶ 20(C). As set forth above in *Langkamp*, negligent retention claims fall within the discretionary function exception and accordingly, the motion is granted with regard to this claim.

---

[2] Effective Nov 1, 2018, "promptly" was changed to "immediately" and a provision was added requiring any teacher of a child less than 18 years of having reason to believe the child is a victim of abuse or neglect to report the matter immediately to the Department of Human Services.

The Court finds dismissal inappropriate on Plaintiffs' negligent investigation claim, Amended Complaint ¶ 20(D). In *Najera v. Indep. School Dist. Of Stroud*, 60 F. Supp. 3d 1202 (W.D. Okla. 2014), this Court considered a motion to dismiss addressing a negligence claim similar to that levied by Plaintiffs herein. Plaintiffs alleged the minor child was sexually harassed and assaulted by the softball coach. They pled several theories of negligence, including failure to maintain safe school premises, negligent supervision of students and teachers in the gymnasium where the abuse was alleged to have occurred, and failure to prevent the continued sexual assault and harassment after the District was warned of its employee's conduct. The Court concluded the District was immune under § 155(5) from the claims that it failed to maintain safe school premises and negligent supervision of students and teachers in the gym. The Court refused to dismiss the negligence claim as it related to allegations that the District failed to prevent the continued harassment of the student victim once it had been notified.

> There is no controlling decision from the Oklahoma Supreme Court on the issue of whether the discretionary function exemption applies to a case in which a plaintiff alleges that a school district had notice of a teacher's inappropriate behavior and failed to act.
>
> ***
>
> The discretionary function exemption is "designed to bar tort litigation challenging governmental decisions which are founded on a balancing of competing policy considerations." [*Nguyen v. State*, 788 P.2d 962] at 965 (citation omitted). The decision not to investigate or take any action following complaints of inappropriate behavior on the part of [the coach] "did not involve a balancing of policy considerations." Id. Once District was notified of Plaintiffs' allegations, it was required "to do the work with reasonable care and in a non-negligent manner." Robinson v. City of Bartlesville Bd. of Educ., 700 P.2d 1013, 1017 (Okla.1985). Therefore, District is not immune from Plaintiffs' claims . . . which allege that District failed to prevent the continued sexual assault and harassment of [the child]

after it learned of [the coach's] conduct. But District is immune from Plaintiffs' claims . . . alleging a general failure to supervise and failure to maintain a safe school premises.

*Id.* at 1206. The Court finds no basis in post-*Najera* Oklahoma Supreme Court or Tenth Circuit authority or in the parties' briefs to alter this analysis, which applies in equal force to a negligent investigation claim.

In ¶ 20(F) of the Amended Complaint, Plaintiffs allege the District negligently hired Holly Morris. The Court concurs with the decision of Judge DeGiusti in *Higginbottom v. Mid-Del School District*, No. CIV-15-1041-D, 2016 WL 951691 (W.D. Okla. Mar. 9, 2016), wherein he concluded that negligent hiring claims are precluded by the OGTCA, because they involve policymaking and planning concerns, and thus are discretionary. *Id.* at *3; *see also Langkamp*, 2017 WL 875483, * 4.

To the extent Plaintiffs complain that Defendant negligently developed or implemented or failed to develop or implement policies and procedures designed to protect students from Ms. Morris, Amended Complaint ¶ 20(G), the claims are subject to dismissal under § 155(4), which exempts the District from liability for claims arising out of failure to adopt or enforce any policy. See *State ex rel. Oklahoma Dep't of Public Safety v. Gurich*, 238 P.3d 1, 4 (Okla. 2010) ("The State and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented.").

In ¶ 20(H) of the Amended Complaint Plaintiffs allege the District negligently trained Holly Morris. The Court again refers to *Langkamp* and finds that the negligent training claim is barred by the discretionary function exception. Plaintiffs' final negligence

claim asserts the failure to exercise reasonable care to keep the school premises reasonably safe. (Doc. No. 23 ¶ 20(J)). This Court concluded that such a claim was barred in *Najera*, and finds no basis for retreating from this conclusion in either Plaintiffs' Amended Complaint or their response to the Motion to Dismiss. For the reasons set forth above, the Court hereby GRANTS the Motion to Dismiss as it relates to Plaintiffs' negligence claims, with the exception of the claim set forth in § 20(D), failure to investigate.[3]

In Count 2 Plaintiffs assert a claim for negligent infliction of emotional distress. Defendant District argues dismissal is appropriate because Oklahoma does not recognize such a claim. Plaintiffs assert that such a claim is proper, asserting that "Mr. and Mrs. Nation are direct victims as eyewitnesses of the physical and mental abuse suffered by their son and are entitled to maintain a cause of action for negligent infliction of emotional distress." (Doc. No. 31, p. 6).

Under Oklahoma law, negligent infliction of emotional distress is not an independent tort, but a version of the tort of negligence. *Kraszewski v. Baptist Med. Ctr. of Okla.*, 916 P.2d 241, 243 n.1 (Okla. 1996). In support of this argument Plaintiffs rely on *Kraszewski*, but the Court disagrees that this case supports their position.

> To recover for emotional distress under Oklahoma law, "a plaintiff must . . . be a 'direct victim' rather than a 'bystander.'" *Kraszewski* at ¶ 10. Direct victims are those individuals who are "directly physically involved in the accident," but whose emotional distress results from the suffering of another. *Kraszewski* at ¶ 8. Bystanders, on the other hand, are those individuals who are not directly involved in the accident, but are seeking damages for emotional distress resulting from witnessing the injury of another. Kraszewski at ¶ 7. See also *Shull v. Reid*, 2011 OK 72, n. 5, 258 P.3d 521

---

[3] This claim includes some aspect that Defendant District both failed to conduct a reasonable investigation into Ms. Morris' behavior once it received complaints and failed to prevent her from having access to J.N. upon receipt of the information regarding the abuse.

> ("The plaintiff must be a victim, not a bystander, directly involved in the incident, damaged from directly viewing the incident and a close family relationship must exist between the plaintiff and the party whose injury gave rise to plaintiff's mental anguish.

*Ridings v. Maze*, 414 P.2d 835, 837-38 (Okla. 2018). Nothing in Plaintiffs' Amended Complaint provides a factual basis from which the Court can infer that either Mr. or Mrs. Nation was a "direct victim." They do not allege they were present and witnessed any incident that gave rise to their emotional suffering. *Id.* at 838. The emotional distress resulting from the alleged wrong to another, J.N., is not sufficient to support the claims of Mr. and Mrs. Nation. Defendant's Motion to Dismiss is granted as to Plaintiffs' negligent infliction of emotional distress claim.

The District seeks dismissal of Plaintiffs' 42 U.S.C. § 1983 claims, Count 5 of the Amended Complaint.[4] Plaintiffs allege:

> Defendant, Piedmont Independent School District No. 22 was at all times material hereto, a state actor acting under color of state law. Defendant denied Plaintiffs their rights to Due Process and Equal Protection of the Law by:
>
> A.    Enacting inadequate policies regarding the reporting of suspected child abuse to law enforcement.
> B.    Failing to remove persons causing abuse and harm to its students.
>
> C.    Failing to remove students from classrooms where they were being subjected to both physical and mental abuse at the hands of Holly Noelle Morris.
>
> D.    Failing to train and supervise Holly Noelle Morris.
>
> E.    Failing to timely report child abuse to law enforcement.
>
> F.    Failing to investigate Morris's misconduct.

---

[4] The Amended Complaint includes Count 5 twice, once for a 42 U.S.C. § 1983 claim and once for a Title IX claim.

G.      Failing to adequately train and supervise the Piedmont School District's staff and employees.

H.      Exhibiting deliberate indifference to the physical and mental abuse being inflicted on the special needs students of the Piedmont School District by Holly Noelle Morris.

Doc. No. 23, p. 5. Defendant contends Plaintiffs' allegations under § 1983 are insufficient because there is no respondeat superior liability under § 1983.

28 U.S.C. § 1983 authorizes suit against "every person, who, under color of" state law, deprives a U.S. citizen of his federal rights. Local school districts are "persons" within the meaning of that statute, and they thus may be subject to suit for violation of federal law, however, the deprivation must be caused by a custom or policy of the district. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 663, 694 (1978). An entity, however, cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. *Id.* at 689.

> "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. 1292. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); see also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. See *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. 1292; *Praprotnik*, 485 U.S. at 123–27, 108 S.Ct. 915. Finally,

municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused. *City of Canton v. Harris*, 489 U.S. 378, 388–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

To the extent Plaintiffs are attempting to rely on a policy or custom of the District as the driving force behind the alleged violation of their constitutional rights, they do not address such an argument in response to the Motion to Dismiss. Plaintiffs do not allege the District had a policy of permitting employees to assault students, nor do they allege that Ms. Morris, the teacher at the center of this controversy, was the final policy maker for the District. Rather, Plaintiffs allege in the Amended Complaint that Defendants failed to train and supervise Holly Morris, District staff and employees, and failed to remove students from classrooms where Ms. Morris was subjecting them to physical and mental abuse. (Doc. No. 23, ¶ 28). Given Plaintiffs' allegations and their failure to respond to this argument in the motion to dismiss, the Court construes the Amended Complaint as seeking relief from the District under the final theory, failure to train or supervise.

To avoid dismissal of a § 1983 claim against the District premised on inadequate hiring, training, or supervision, Plaintiff must allege facts to support the inference that the Board's action "was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)(citation omitted). The deliberate indifference standard may be satisfied "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk

of harm." *Najera,* 60 F. Supp. 3d. at 1207 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Plaintiffs allege that "[m]embers of the administration of Defendant, Piedmont Independent School District No. 22 were repeatedly warned of the physical and mental abuse being inflicted upon the special needs students of Holly Noelle Morris." (Doc. No. 23, ¶ 7). The Court finds Plaintiffs' allegations sufficient with regard to municipal liability under a failure to train or supervise theory in light of Plaintiff's allegation that the District had actual knowledge of Defendant Morris's actions but failed to act to protect the students.

Plaintiffs' response to the motion presents argument on the danger creation theory and special relationship theory, both exceptions to the general rule that the Due Process Clause is not a guarantee of a minimal level of safety and security and which allow a plaintiff to hold a state actor liable for the violence of private persons. The Court finds that neither theory applies in this case.

> "As a general matter, ... a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. at 197, 109 S.Ct. 998. See (*Rost ex rel. K.C. v. Steamboat Springs RE–2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir.2008)). Generally, negligence does not trigger the Due Process Clause's protections. See *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

> \*\*\*

> There are, however, two exceptions to this general rule. First, the special-relationship doctrine arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to provide protection to that individual. See *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir.2003); *Graham v. Indep. Sch. Dist. No. 1–89*, 22 F.3d 991, 994–995 (10th Cir.1994). Second, the danger-creation theory provides that a state may also be liable for an individual's safety if it created the danger that harmed the individual. See *Christiansen v. City of Tulsa*, 332 F.3d at 1280.

*Schaefer v. Las Cruces Public School Dist.*, 716 F. Supp. 2d 1052, *1064 (D. N.M. 2010).

Plaintiffs cite no legitimate basis for reliance upon the special-relationship doctrine, which requires a plaintiff to establish involuntary commitment to state custody. Mandatory school attendance laws are not sufficient to give rise to a special relationship, even if the child at issue has a disability. See *Sutherlin v. Independent School Dist. No. 40 of Nowata County, Okla.*, 960 F. Supp. 2d 1254, 1260-61 (N.D. Okla. 2013); *Maldonado v. Josey*, 975 F.2d 727, 732–33 (10th Cir.1992); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995).

To the extent Plaintiffs seek to rely on the state-created danger theory, their claims similarly fail.

> [A] plaintiff must "demonstrate affirmative conduct on the part of the State Defendants that created or increased the danger.... Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183; accord *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992) (noting that invocation of the danger creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger"). . . . Nonfeasance is insufficient to satisfy the first element of the danger creation theory's prima facie standard. See [*Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226,] 1238 n.13 (citing *Graham v. Indep. Sch. Dist. No. I–89*, 22 F.3d 991, 995 (10th Cir.1999)).

*MAP v. Board of Trustees for Colorado School for Deaf and Blind*, No. 12-cv-02666-RM-KLM, 2014 WL 3748642, *9 (D. Colo. April 28, 2014). Plaintiffs' claims against the District are premised on nonfeasance, not affirmative action. Furthermore, Ms. Morris was

not a private actor at the time of the alleged events, a requirement for reliance on the state-created danger theory.[5]

In Proposition IV of the Motion to Dismiss, the District challenges Plaintiffs' equal protection claims, asserted under both the United States Constitution and the Oklahoma Constitution.[6] The Court will limit its consideration to the federal equal protection claims, because, although the introductory paragraph to this section asserts that it is a challenge to the state constitutional claim, the remainder of the motion does not address the state claim in any manner. The District argues that any equal protection claim is not sufficiently pled.

> The Equal Protection Clause of the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This mandate "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). To state an equal-protection claim, a plaintiff must allege that the defendant treated him or her differently from another similarly situated person. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). To be similarly situated, a person "must be prima facie identical in all relevant respects or directly comparable in all material respects." Although this is not a "precise formula," it is nonetheless "clear that similarly situated individuals must be very similar." *United States v. Moore*, 543 F.3d 891, 896–97 (7th Cir. 2008)(citations omitted).

*C.W. by & through B.W. v. Denver Cty. Sch. Dist. No. 1*, 17-cv-2462-MSK-MEH, 2018 WL 3861157, at *2 (D. Colo. Aug. 14, 2018).

Plaintiffs assert that J.N. was treated differently than non-disabled students, because only the special needs students were taught by Ms. Morris and subjected to her mental and

---

[5] The Court acknowledges the Tenth Circuit's reasoning that "a sexual relationship between a teacher and student, even while the teacher is still a state actor, is more like 'private activity' for purposes of danger creation theory." *M.C. v.* Hollis, 2017 WL 1102680 at *3 citing *J.M. ex rel. Morris v. Hilldale Indep. School Dist. No. 1-29*, 397 F. App'x, 445, 458 (10th Cir. Sept. 10, 2010).

[6] The Oklahoma Constitution does not have an equal protection clause, but the Oklahoma Supreme Court identified Article II § 7 of the Oklahoma Constitution, the state due process provision, as providing a functional equivalent. *See Fair School Finance Council v. State,* 746 P.2d 1135, 1148 (Okla. 1987).

physical abuse. Plaintiffs' allegations of an equal protection violation are insufficient, because they do not sufficiently identify differential treatment between groups that are prima facie identical in all relevant respects. Accordingly, Defendant's motion is granted as to the federal equal protection claim.

Defendant next contends that Plaintiffs Russell and Carol Nation have failed to state an equal protection or due process claim because neither alleges a deprivation of his or her rights, rather they seek relief derived from the alleged violation of J.N.'s constitutional rights. Plaintiffs respond by arguing they have stated a claim, "[a]s tax paying citizens of Defendant's school district, Russell and Carol Nation do enjoy the constitutional right of equal protection under the 14th amendment. Russell and Carol Nation's right to be free of the mental anguish and concern over the treatment and lack of protection of their special needs son at the hands of the Defendant were violated." (Doc. No. 31). Plaintiffs cite no caselaw in support of their response, nor has the Court's independent research revealed authority to support their position. Therefore, Defendant's motion is granted with regard to the equal protection claim and due process claims under the United States Constitution, and accordingly, the motion is granted as to Proposition V.

In the second Count 5, Plaintiffs allege a violation of Title IX. Title IX prohibits recipients of federal funds from discriminating on the basis of sex. 20 U.S.C. § 1681(a). The Supreme Court has read Title IX as providing a private right of action for damages if a public school district official had actual notice of sexual harassment and authority to take corrective measures, but failed to do so. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 290 (1998). School districts may also be liable under Title IX upon a showing

that deliberate indifference effectively caused harassment to occur. Id. at 290–91.

A school district may be liable under Title IX upon a showing that (1) it had actual knowledge of and was (2) deliberately indifferent to sexual harassment that was (3) "so severe, pervasive and objectively offensive" that (4) it deprived the victim access to the benefits provided by the school. *Murrell v. School Dist. #1, Denver Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

Defendant argues dismissal is appropriate because Plaintiff has not alleged discrimination on the basis of sex and because the Amended Complaint alleges at best only one instance of harassment that could be construed as referencing J.N.'s sex, when Ms. Morris allegedly "punched J.N. in his privates and even referred to the size of J.N.'s penis," (Doc. No. 23, ¶ 8). Defendant argues this allegation is insufficient to establish severe and pervasive sexual harassment. Plaintiffs contend they have sufficiently pled a Title IX claim, citing the above language from the Amended Complaint and the elements of a Title IX claim.

The Court concurs with the District that Plaintiffs' allegations are insufficient to support a claim under Title IX. Even assuming that the quoted language from the Amended Complaint is sufficient to allege harassment on the basis of sex, citing a single specific instance does not meet the severe and pervasive requirement under Title IX. Conclusory allegations regarding Ms. Morris's alleged poor treatment of students generally are not sufficient to state a claim. Defendant's Motion to Dismiss is granted as to Plaintiffs' Title IX claim.

In Count 6, Plaintiffs seek to recover for the alleged violation of the Parents' Bill of Rights, Okla. Stat. tit. 25 § 2001 et seq, which the District allegedly violated by failing to promptly notify Russell and Carol Nation of the alleged physical assault and mental abuse Defendant Morris inflicted upon their son.[7] Defendant seeks dismissal of Count 6, arguing that under Oklahoma law, no private right of action can be inferred from the statutory language set forth in the Parents' Bill of Rights. Plaintiffs respond by arguing that because no court within Oklahoma has specifically addressed the issue, there is no contradictory authority and therefore a private right of action exists. Although Plaintiffs are correct in noting that no court has considered whether such a cause exists, the absence of authority does not dictate the outcome of Defendant's motion. Rather, the Court must engage in the analysis suggested by Defendant's motion.

In *Holbert v. Echeverria*, 744 P.2d 960 (Okla. 1987), *superseded on other grounds by statute*, the Court provided a three-part test to determine whether a statute implies a private right of action:

> (1) the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) some indication of legislative intent, explicit or implicit, suggests that [the legislature] wanted to create a private remedy and not to deny one; [and] (3) implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme . . . .

Id. at 963 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). Plaintiffs Russell and Carol Nation, as parents, are likely within the class of people on whose behalf the Parents' Bill of Rights was enacted. The legislation, however, provides no indication of intent to use the regulation

---

[7] Okla Stat. tit. 25 § 2002(A) provides generally that parents have the right to be notified promptly if any employee of a political subdivision of the State suspects a criminal offense has been committed against their minor child by someone other than the parent.

to create a private remedy against persons who do not conform to the provisions thereof. There is no suggestion of what remedy would be provided for an alleged violation of the provisions.[8] Therefore, the Court declines Plaintiffs' request to imply a private cause of action under the Parents' Bill of Rights and the motion to dismiss is granted with regard to Count 6.

In their Prayer for Relief, Plaintiffs request punitive damages. The District seeks dismissal of the request arguing it cannot be liable for punitive damages on Plaintiffs' state law claims pursuant to the Oklahoma GTCA. Defendant additionally argues that punitive damages are not permitted against a governmental entity for claims pursuant to 42 U.S.C. § 1983. Plaintiffs do not object to Defendant's argument, rather "Plaintiffs . . . seek leave to amend their causes of action to include additional defendants who may be liable in this case for punitive damages." (Doc. No. 31, p. 16). The Court hereby grants Defendant's motion and denies Plaintiffs' request for leave to amend because it fails to comply with the Court's Local Civil Rules, most notably in that Plaintiffs have not attempted to identify who they would add as a defendant such that the Court could assess the futility of any proposed amendment. Plaintiffs may seek leave to amend via the proper channels should they persist in their desire to add additional defendants.

For the reasons set forth herein, Defendant's Motion to Dismiss is granted as set forth herein and denied as to Plaintiffs' state law claim that the District failed to properly investigate the alleged assault of J.N. by Defendant Morris and J.N.'s 42 U.S.C. § 1983

---

[8] Violation of certain sections of the Bill not at issue in this case can result in a misdemeanor conviction.

due process claim premised on the District's alleged failure to train and supervise Ms. Morris.

      **IT IS SO ORDERED** this 17th day of September 2019.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE