IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Russell Nation, individually and as next friend of J.N., a minor, and Carol Nation individually and as next friend of J.N., a minor<br><br>　　　　　Plaintiffs,<br><br>-vs-<br><br>Piedmont Independent School District No. 22, and Holly Noelle Morris,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)  Case No.: CIV-18-1090-R<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DISTRICT'S REPLY TO PLAINTIFFS' RESPONSE TO**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Defendant, Piedmont Independent School District No. 22 ("District"), submits the following Reply to Plaintiffs' Response to District's Motion for Summary Judgment [Doc. No. 81].

**Plaintiffs' Due Process Claim:**

As to Plaintiffs' failure to train/supervise Morris claim, the undisputed facts show that District trained Morris and was not deliberately indifferent when notified by staff about concerns of Morris' treatment of J.N. and other students.

Plaintiffs argue that this case is analogous with *Sauders as next friend of R.S. v. USD 353 Wellington,* 2021 WL 1210019 (D. Kan. March 31, 2021). However, *Saunders* is distinguishable from this case. In *Saunders,* the court ruled on the school district and individual defendants' motions to dismiss which is a different standard of review from a motion for summary judgment before the court in this case. In other words, the plaintiff only

needed to allege some specific facts instead of undisputed material facts to deny a motion to dismiss. In *Saunders*, the plaintiff claimed that the school district's administration had been notified that the teacher was mismanaging paraeducators for a period of four years from 2015 through 2019 and did not address the concerns or supplement training for its paraeducators. *Id.* at *2.

In this case, the undisputed facts show that Morris had extensive formal training prior to her employment with District and performed her duties without incident for the 2016-2017 school year. Although Morris had previously been trained in both CPI and Mandt (which cover acceptable holds to help de-escalate students), District provided her and other staff, who dealt with special education students, training and/or refresher training in CPI at the beginning of the 2016-2017 and 2017-2018 school years. During the fall of 2017, Morris admitted that District provided her one-on-one CPI training. Additionally, at the beginning of each school year, District provide a multi-day in-service training to its teachers, paraprofessionals, and other staff. The training covers state mandated topics, including but not limited to bullying, child abuse, autism, and other subject matters. District also reviewed its policies and goals. District's special education staff received training throughout the school year which Morris attended. The Special Education meetings addressed a variety of subject matters from legal updates to specific problems with certain students.  Each year, Morris received a copy of District's policies on Teacher Standards which requires a teacher to protect a student from conditions harmful to learning or to health and safety. District's

policy uses the exact same language as OAC 210:20-29-3, 210:20-29-4, and 70 O.S. §6-101.22.

Both Plaintiffs and Caraballo admit that they each brought two concerns on separate occasions to McDonald in the fall of 2017. After receiving concerns about Morris in September and October of 2017, McDonald met with Morris and Plaintiffs to discuss the concerns and possible solutions. In October of 2016, McDonald also created a written "Expectations of Para's" list for Morris and her staff. The "Expectations" list included that two staff members must accompany J.N. to the bathroom. McDonald met individually with Morris and her paraprofessionals to review and sign the "Expectations" list. McDonald and/or Assistant Principal DeKoch observed Morris 4-5 times each week. Additionally, McDonald hired extra paraprofessionals to help in Morris' classroom in early September of 2017. In the fall of 2017, District also brought in an outside consultant to observe another student in the class and train Morris and her staff.

Unlike *Saunders,* the concerns about Morris occurred over a couple of months versus a period of four years. Unlike *Saunders,* where the administration simply met with the teacher and did nothing more, District trained Morris and her staff how to properly de-escalate students, and McDonald responded to concerns about Morris, met with Morris and Plaintiffs to discuss and problem solve issues, provided additional staff to Morris' classroom, observed Morris 4-5 times a week, and provided an outside behavioral specialist to observe and train Morris and her staff. In other words, District was not deliberately indifferent but

continued to train and to supervise Morris and respond to reported concerns about Morris. Thus, summary judgment should be granted in favor of District as to Plaintiffs' failure to train/supervise Morris claim.

Plaintiffs cite several cases which are distinguishable from this case. *Sutton v. Utah State Sch. For the Deaf & Blind,* 173 F.3d 1226 (10th Cir. 1999); *Barney v. Pulsipher,* 143 F.3d 1299 (10th Cir. 1998); *Dockery v. Barnett,* 167 F.Supp.2d 597 (S.D. N.Y. 2001); *Herrera v. Santa Fe Publ Sch.,* 41 F.Supp. 3d 1188 (D.N.M. 2014).[1] In *Sutton,* the mother of a special needs student filed a failure to train claim against the school district and the principal, alleging deliberately indifferent to the minor plaintiff being repeatedly molested by another student in the bathroom. The Tenth Circuit affirmed the trial court's dismissal of the plaintiff's failure to train claim against the school district and only allowed the failure to train claim to proceed against the principal in his individual capacity. *Sutton,*173 F.3d at 1242. Unlike *Sutton,* there is no individual defendant alleged to have failed to supervise/train Morris.

In *Dockery,* parents of austistic students filed a failure to train under Section 1983 claim against the school district, the principal, and the teacher, in their individual and official capacities. The defendants filed a motion for summary judgment which the trial court denied because there was evidence that the school district took no action, other than asking the

---

[1]Plaintiffs' brief references Dr. Kraizer's report on pages 14-17. However, District filed a *Daubert* motion [Doc. 76] on May 28, 2021. As to District's summary judgment motion, the court may exclude the testimony of Plaintiffs' expert if it finds it is inadmissible. See *Otero v. Nat'l Distributing,* 627 F.Supp 1232, 1239 (D.N.M. 2009).

teacher whether she was abusing her pupils, the principal never spoke to the parents, observed the classroom, or conducted an investigation in response to the aides' concerns. *Dockery,* 167 F.Supp.2d at 604. Unlike *Dockery,* District trained Morris, provided one-on-one CPI training for Morris, hired additional staff for Morris, met with Morris and Plaintiffs to discuss concerns, observed Morris' classroom 4-5 times a week, created a written "Expectations" list for Morris and her staff which included two staff to escort J.N. to the bathroom, and brought in an outside behavioral specialist to observe and train Morris.

In *Herrera*, students alleged a failure to train a security guard under Section 1983 in a lawsuit against the school district, the principal, and school board members, for violation of their Fourth Amendment rights for pat-down searches conducted during school dances. For sixteen years, the school conducted pat-down searches of all students who attended the prom. The searches were conduct pursuant to the principal's directions, the board approved the searches, and several board members attended the prom as chaperones. The court denied the defendants motion for summary judgment because a jury could reasonably conclude that the school district had a wide spread practice of conducting pat-down searches at the prom based on the practice having been in place for sixteen years. *Herrera*, 41 F.Supp3d at 1271-72. Unlike *Herrera*, District trained Morris as discussed above. The concerns about Morris were reported during a few months instead of sixteen years, and District's Board was not aware of any issues about Morris until after the January 2018 hallway incident.

In this case, the undisputed facts show District's Teacher Standards and Bullying

policy required teachers and staff to prevent harm to students, District trained Morris in a variety of ways, as previously discussed, and provided additional training when concerns were expressed. It is common sense not to choke, hit, or slap another person and training is not needed on such matters.

Moreover, in previous failure to train cases under Section 1983, the Tenth Circuit has considered an employee's formal training and evaluations in addition to in-service training provided by the municipality. *Carr v. Castle,* 338 F.3d 1221, 1226 (10th Cir. 2003). Morris had extensive formal training including a masters in special education and received positive evaluations. Morris was a rogue employee who rejected District's policy and training on how to handle special needs students like J.N. for which District is not liable. See *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Unlike the cases cited by Plaintiffs, the undisputed facts show that District trained/supervised Morris and was not deliberately indifferent to J.N.'s constitutional rights under Section 1983 and summary judgment should be granted in its favor.

Plaintiffs assert that District failed to train its employees on reporting child abuse and bullying and that such failure to train deprived J.N. of his right to substantive due process under Section 1983. However, the Court dismissed their failure to train/supervise staff claim in its Order partially granting District's Motion to Dismiss on September 17, 2019. Doc. 33 at pp. 20-21. The Court ruled that what Morris did is not "child abuse" under state law. Doc. 33,pp.6-7. Moreover, there are no such claims alleged by Plaintiffs in their First Amended

Complaint regarding any failure to report bullying or failure to train staff on reporting bullying by employees. Doc. 23,¶28.

On March 12, 2021, Plaintiffs filed a Motion to Amend their Complaint in which their proposed Second Amended Complaint again alleged a failure to train/supervise District's staff. Docs. 57, 57-1. However, on March 18, 2021, the Court denied Plaintiffs' Motion to Amend. Doc. 63. The Court has **twice** denied Plaintiffs' failure to train/supervise District's staff claim. Thus, summary judgment should be granted to District and against Plaintiff for their claim of failure to train/supervise District's staff regarding reporting child abuse and bullying.

**Plaintiffs' Negligent Investigation Claim under the GTCA.**

Plaintiffs rely on *Najera v. Indep. Sch. Dist. of Stroud,* 60 F.Supp.3d 1202 (W.D. Okla. 2014) to support their argument that there is no discretionary exemption under the GTCA for negligent investigation. Yet, this court has ruled otherwise since *Najera. Johnson v. Ind. Sch. Dist. No. 89 of Oklahoma City,* CIV-15-680-D, 2016 WL 1270266, at *7 (W.D. Okla. March 31, 2016).[2] Plaintiffs seem to assert that the court in *D.G. v. Westville Public Schools,* 2018 WL 4323917 (E.D. Okla. Sept. 10, 2018), held that negligent investigation is not a discretionary function. However, the plaintiffs did not assert a negligent investigation claim against the school district. *Id.*

---

[2] In Plaintiffs' Reply brief (Doc. 81), footnote 1, page 20, they seem to assert that the Court was not persuaded by the *Johnson* case's ruling on negligent investigation. However, in District's Motion to Dismiss (Doc. 25) it did not assert the ruling in *Johnson* in its GTCA exemption argument.

In *Johnson,* Judge DeGuisti found that negligent investigation is a discretionary function because an investigation involves an element of judgment or choice and is therefore exempt under the GTCA. *Id.* at *8-9. As discussed above, the undisputed facts show that District conducted investigations when concerns were expressed about Morris. District did not have an investigation policy for reporting concerns about a teacher's conduct. Each time that McDonald received a reported concern about Morris, he had to make a judgment call. McDonald had to evaluate the reported concern, the credibility of the reporter and witnesses, what witnesses to interview, what questions to ask, and ultimately determine the proper response and/or discipline. In other words, District's investigations were discretionary and exempt under the GTCA. Thus, summary judgment should be granted to District as to Plaintiffs' negligent investigation claim.

Plaintiffs also seem to assert that Morris was acting within the scope of employment because her actions of hitting, slapping, and choking J.N. were incident to some service being performed for District and arose out of an emotional response to action being taken for District. See *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 867 P.2d 1241, 12 45 (Okla. 1993). Yet, *Rodebush*, is irrelevant because the defendant was not a political subdivision and the Oklahoma Governmental Tort Claims Act ("GTCA") did not apply.

"Scope of employment" for purposes of the GTCA "means performance by an employee <u>acting in good faith within the duties of his office or employment</u>. . . ." 51 O.S.

§ 152(9) (emphasis added). *See also Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶¶14-15, 212 P.3d 1158. As the Oklahoma Supreme Court noted in *Tuffy's, Inc.*, an employee is acting within the scope of employment if the employee is "engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Id*. at ¶ 7. A governmental entity subject to the protections of the GTCA, such as District, cannot be held liable for any act of an employee unless the employee can be found to have acted *in good faith* and within the scope of employment. *McMullen v. City of Del City*, 1996 OK CIV APP 46, ¶¶ 5-9, 920 P.2d 528, 530-31; *Parker v. City of Midwest City*, 1993 OK 29, ¶¶ 6-10, 850 P.2d 1065, 1066-67. However, "such protection does not render such employees immune from liability for willful and wanton negligence or conduct which places the employees outside the scope of their employment". *Holman By and Through Holman v. Wheeler,* 1983 OK 72, 677 P.2d 645, 647. In other words, The GTCA "may not be construed to mean that an employee may conduct himself in a willful and wanton manner and retain the immunity from liability that the Tort Claims Act provides". *Id.; see also Hazlett v. Board of Comm'rs,* 168 OK 290, 32 P.2d 940; *Houston v. Reich,* 932 F.2d 883 (10th Cir. 1991).

In *Holman,* a school superintendent, allegedly spanked and beat a ten-year-old with unnecessary and excessive force while administering school discipline. The plaintiff alleged that the superintendent's acts were unlawful, outside the scope and course of his employment, and constituted a willful assault and battery upon the minor plaintiff. The court

agreed that, "[g]overnmental immunity did not extend to public officers who acted in a willful or wanton manner when the Tort Claims Act was enacted". *Id.*

The undisputed facts show that District adopted and trained Morris and other Special Education staff to use CPI to de-escalate students, including proper holds. Morris admitted that CPI does not use pressure holds on students. District's Teacher Standards and Bullying policies require a teacher to prevent harm to a student. Plaintiffs' allegations that Morris hit, slapped, and punched J.N. are not duties assigned to Morris as a special education teacher. Plaintiff was charged and plead "nolo contendre" to two charges of Causing a Child to be Deprived under 21 O.S. §858.1. The plea agreement that she signed states that "Defendant caused two of her Piedmont Middle School students D.O. and J.N. to be deprived by engaging pattern of physical contact which was not consistent with her role as a teacher." Like *Holman,* Morris acted outside the scope of her employment, and District is not liable for Morris actions under the GTCA. Thus, summary judgment should be granted in District's favor and against Plaintiffs as to their negligence claim under the GTCA.

For the reasons stated above, District moves for summary judgment as to Plaintiffs' remaining claims under Section 1983 and the GTCA.

S/Laura L. Holmgren-Ganz
Laura L. Holmgren-Ganz, OBA #12342
Laura L. Holmes, OBA #14748
The Center For Education Law, P.C.
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
E-Mail: LGanz@cfel.com
Attorneys for District

## Certificate of Service

I hereby certify that on June 29, 2021, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System: Donald A. Herring, Patrick H. Lane, Jordan M. LePage, Randall E. Long, David Morse, Chris D. Smith and Rebecca L. Newman.

S/Laura L. Holmgren-Ganz
Laura L. Holmgren-Ganz
